# FOR PUBLICATION



**FILED**

Feb 20 2014, 6:39 am

*[signature]*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DONALD C. SWANSON, JR.**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JONATHAN D. CARPENTER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A05-1304-CR-207 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Wendy Davis, Judge
Cause No. 02D04-1207-FD-1008

**February 20, 2014**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Jonathan D. Carpenter appeals the admission of evidence obtained from a warrantless search of his house. He argues the initial warrantless search of his house violated his rights under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. We affirm.

## FACTS AND PROCEDURAL HISTORY

On July 13, 2012, police and animal control officers were called to Carpenter's residence on a report four dogs were fighting in Carpenter's yard. When they arrived, the dogs were still fighting, but one had retreated under a deck and seemed wounded. The dogs were covered with mud and blood, and they kept running in and out of the house through an opened sliding glass door.

Animal Control Officer Bryan Miller climbed over the fence into Carpenter's yard and captured three of the four dogs. One dog had run into the house through the sliding glass door and had not come back outside. Officer Miller and Sergeant Derrick Westfield of the Fort Wayne Police Department entered Carpenter's house to search for the dog and to determine if the dogs had injured anyone inside the house. Sergeant Westfield announced his identity and asked anyone inside the house to come out. There was no response.

Officer Miller and Sergeant Westfield observed feces and urine throughout the house, and they noticed what appeared to be blood on the walls, though it was unclear whether the blood was human or canine. As they walked through the house searching for the dog, they

2

located two rooms with "plastic sheeting and ventilation." (Suppression Tr. at 23.)[1] One of the doors to the rooms was slightly cracked open and there was a strong light coming from inside. Officer Miller and Sergeant Westfield entered the room, where they found marijuana plants.

Officer Miller and Sergeant Westfield went upstairs to search for the dog, and found it in a room with a closed door that had a hole in the bottom of it. The room contained a mason jar full of marijuana. Officer Miller and Sergeant Westfield captured the dog and determined there were no people in the house. Carpenter returned to the house before the police left and was taken into custody.

Sergeant Westfield told narcotics officers what he observed in Carpenter's residence and took an officer to the house. Based on Sergeant Westfield's observations, the narcotics officer prepared a probable cause affidavit and obtained a search warrant. Police entered Carpenter's house and confiscated marijuana and other controlled substances.

The State charged Carpenter with Class D felony maintaining a common nuisance,[2] Class D felony possession of more than thirty grams of marijuana,[3] Class A misdemeanor possession of paraphernalia,[4] and three counts of Class D felony possession of a controlled substance.[5] Carpenter filed a motion to suppress the evidence found in his house, and the

---

[1] The transcripts for the Motion to Suppress hearing and the trial are numbered separately, and we will refer to them as "Suppression Tr." and "Trial Tr." respectively. Indiana Appellate Rule 28(A)(2) mandates the pages of the transcript "shall be numbered consecutively regardless of the number of volumes the Transcript requires."

[2] Ind. Code § 36-48-4-13(b)(2).

[3] Ind. Code § 35-48-4-11.

[4] Ind. Code § 35-48-4-8.3(b).

[5] Ind. Code § 35-48-4-7(a). One of the counts was dismissed before trial.

trial court denied it.

At his bench trial, Carpenter renewed his objection to the admission of the evidence found in his house. The trial court found Carpenter guilty as charged.

**DISCUSSION AND DECISION**

When, as is the case here, the trial court denies a motion to suppress, and the defendant makes an objection to the admission of the evidence at trial, we review the admission of that evidence for an abuse of discretion. *Washington v. State*, 784 N.E.2d 584, 586-87 (Ind. Ct. App. 2003). An abuse of discretion occurs when the trial court's decision is clearly against the logic and the effect of the facts and circumstances before the court. *Id.* at 587.

    1.    <u>Fourth Amendment to the United States Constitution</u>

The Fourth Amendment to the United States Constitution requires law enforcement officials to obtain a valid warrant before conducting searches or seizures. *State v. Straub*, 749 N.E.2d 593, 597 (Ind. Ct. App. 2001). However, "on occasion the public interest demands greater flexibility than is offered by the constitutional mandate" of a warrant. *Rabadi v. State*, 541 N.E.2d 271, 274 (Ind. 1989). The exceptions to the warrant requirement are "few in number and carefully delineated," *United States v. United States Dist. Court for Eastern Dist. Of Mich., Southern Division*, 407 U.S. 297, 313 (1972). Exigent circumstances are an exception to the warrant requirement and have been found:

> (1) where a suspect is fleeing or likely to take flight in order to avoid arrest; (2) where incriminating evidence is in jeopardy of being destroyed or removed unless an immediate arrest is made; (3) where a violent crime has occurred and entry by police can be justified as means to prevent further injury or to aid

4

those who have been injured; and (4) in cases that involve hot pursuit or movable vehicles.

*Straub*, 749 N.E.2d at 597-98. The State has the burden to demonstrate exigent circumstances to overcome the presumption of unreasonableness that accompanies warrantless searches and seizures. *Id*. at 598.

Carpenter argues no exigent circumstances permitted the officers to enter his home[6] without a warrant. He distinguishes *Trimble v. State,* 842 N.E.2d 798 (Ind. 2006), *reh'g granted on other issues*, 848 N.E.2d 278, and *Davis v. State*, 907 N.E.2d 1043 (Ind. Ct. App. 2009), where warrantless entry into the curtilage of a house was permissible under certain circumstances. He argues those cases "find that the protection of animals could support a limited search of property *outside* the home, [but] neither supports a conclusion that an injured animal creates sufficient exigent circumstances to support a warrantless search *inside* of a home." (Br. of Appellant at 8) (emphasis in original). We disagree.

Police were called to Trimble's house to investigate a report of animal neglect involving a dog named Butchie. The report indicated Butchie "had no food or water, his leg was injured, his ears and genitals appeared frostbitten, and he seemed to be starved." *Trimble*, 842 N.E.2d at 800. Trimble argued the trial court abused its discretion when it denied his motion to suppress evidence of Butchie's condition because the evidence was obtained in violation of Trimble's Fourth Amendment rights. Our Indiana Supreme Court

---

[6] In his brief, Carpenter also makes a passing argument regarding the legality of the officers entering his backyard by going over the three-foot-high chain link fence. However, Carpenter did not present this argument before the trial court, and therefore it is waived. *See State v. Delph*, 875 N.E.2d 416, 422 (Ind. Ct. App. 2007) (argument raised for first time on appeal is waived), *reh'g denied*, *trans. denied*.

held Trimble had "no legitimate privacy interest in the appearance of a dog that has been tied up outside in an area readily observable by the public," *id*. at 803, and exigent circumstances to justify a warrantless search existed based on Butchie's condition, which indicated animal neglect.

In *Davis*, police were called to Davis' home to investigate a report of malnourished dogs and a foul odor. Police found several malnourished dogs chained up in the yard, items used to train dogs for dog fighting in an open shed, and an animal carcass in the back of a truck. As in *Trimble*, the police investigation extended only into the curtilage of Davis' home, and Davis argued the evidence from such a warrantless search violated his Fourth Amendment rights. We determined animal cruelty was an exigent circumstance that justified a warrantless search of the curtilage of Davis' property.

*Trimble* and *Davis* dealt with whether the conditions of animals could constitute exigent circumstances justifying warrantless searches of areas outside of the homes. In the case before us, the investigation extended into the house only when one of the dogs, which was covered in blood, entered the home through an open door and would not come out.

Exigent circumstances permitted the police to execute a warrantless search of Carpenter's home. On arrival at Carpenter's home, officers observed four dogs covered in blood; three of them were attacking the fourth and acting aggressively. The three dogs ran in and out of the house via an open sliding door. One of the dogs entered the house and would not come out. Officer Miller testified he entered Carpenter's house through the open door because "due to the staining, possible blood on this animal, I didn't know if I had a victim or

6

not inside the residence or other dogs who were victims inside the residence . . ." (Suppression Tr. at 13.)[7]  The trial court did not err when it denied Carpenter's motion to suppress the evidence against him because the officers had reasonable suspicion to believe a violent crime might have occurred, properly executed a search of the premises for that purpose, and the search did not violate Carpenter's Fourth Amendment rights. *See Alspach v. State*, 755 N.E.2d 209, 212 (Ind. Ct. App. 2001) (warrantless entry based on exigent circumstances when police observed a trail of blood leading to an apartment, the door to the apartment was slightly ajar, and police did not receive a response on announcing their presence, even though police did not observe a violent crime on entering the apartment), *trans. denied*.

2.    Article 1, Section 11 of the Indiana Constitution

Though the text of the search and seizure clause of the Indiana Constitution is similar to the Fourth Amendment to the United States Constitution, our Indiana Supreme Court has articulated a separate analysis. *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005).  The State has the burden of showing that, given the totality of the circumstances, the intrusion was reasonable. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001).

"In determining reasonableness under Section 11, we recognize that Indiana citizens are concerned not only with personal privacy but also with safety, security, and protection

---

[7] Carpenter argues the police should have stopped their search upon locating the missing dog, and their continued search of the house exceeded the scope of the authorized search.  A search extending beyond the exigencies presented violates the Fourth Amendment. *Bryant v. State*, 660 N.E.2d 290, 301 (Ind. 1995). The exigent circumstance that justified the warrantless search was concern there might be an injured person; finding the dog did not end that circumstance.  Therefore, the officers' continued search of the house for the purpose of locating an injured person did not exceed the scope of the exigencies.

from crime." *Saffold v. State*, 938 N.E.2d 837, 840 (Ind. Ct. App. 2010) (citations omitted), *trans. denied*. To determine reasonableness, we consider: (1) the degree of concern, suspicion, or knowledge that a violation has occurred, (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and (3) the extent of law enforcement's needs. *Litchfield*, 824 N.E.2d at 361.

Regarding factor one, officers testified they were concerned there was an injured person inside the house based on the dogs' aggressive behavior, the fact the dogs were covered in blood, and the dogs' actions of running in and out of the house through an open door, with one dog eventually remaining in the house. *See VanWinkle v. State*, 764 N.E.2d 258, 267 (Ind. Ct. App. 2002) (entry into a residence to protect others from bodily harm is reasonable under Article 1, Section 11 of the Indiana Constitution), *trans. denied*. Regarding factor two, the degree of intrusion was reasonable, as the aim of the entry was to aid a possibly-injured person. *See Holder v. State*, 847 N.E.2d 930, 940 (Ind. 2006) ("It is because of concerns among citizens about safety, security, and protection that some intrusions upon privacy are tolerated, as long as they are reasonably aimed toward these concerns."). Finally, regarding factor three, the officers had reasonable, articulable suspicion an injured person was in the house, and thus the law enforcement need was reasonable to retrieve that person or to stop the dog inside the house from continuing to attack the person, had that been the case in the house. *See Benefiel v. State*, 578 N.E.2d 338, 345 (Ind. 1991) (potential danger to human life "certainly outweighed appellant's reasonable expectations to privacy."), *cert. denied* 504 U.S. 987 (1992).

8

Based on the totality of the circumstances, we cannot say the warrantless search of Carpenter's house violated his rights under Article 1, Section 11 of the Indiana Constitution because the officers had reasonable suspicion there was an injured person inside the house. Therefore, the trial court did not err when it denied Carpenter's motion to suppress the evidence.[8]

## CONCLUSION

The warrantless entry into Carpenter's home did not violate his Fourth Amendment or Article 1, Section 11 rights against unlawful search and seizure. Accordingly, we affirm.

Affirmed.

BAILEY, J., and BRADFORD, J., concur.

---

[8] Carpenter also contends his convictions should be overturned for insufficient evidence. However, that argument presumes all the evidence he challenged should have been suppressed. As we hold the trial court did not abuse its discretion in denying his motion to suppress, we need not address his sufficiency of the evidence argument.